FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAY 17  AM 10: 10

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ROGER GAMBREL,                    )
                                  )
          Petitioner,             )
                                  )
     v.                           )  CV 112-126
                                  )  (Formerly CR 109-003)
UNITED STATES OF AMERICA,         )
                                  )
          Respondent.             )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate confined to federal custody at FCI Butner Low in Butner, North Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion. (Doc. no. 3.) Petitioner opposes the motion. (Doc. no. 4.) For the reasons set forth below, Respondent's Motion to Dismiss should be **GRANTED**.

## I.     BACKGROUND

On January 7, 2009, a federal grand jury indicted Petitioner on three counts: (1) transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); (2) receipt of child pornography, in violation of 21 U.S.C. § 2252A(a)(2); and, (3) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). United States v. Gambrel, CR 109-003, doc. no. 1 (S.D. Ga. Jan. 7, 2009) (hereinafter "CR 109-003"). The indictment also included a forfeiture allegation, providing that if Petitioner was convicted for any count in the indictment, he would forfeit property used or intended to be used in committing the offense, as well as property traceable to such property. Id.

Thereafter, pursuant to a written plea agreement, Petitioner pled guilty to the second count, receipt of child pornography. Id., doc. no. 31. Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> Understanding that 18 U.S.C. § 3742 provides for an appeal by a defendant of the sentence under certain circumstances, as a part of this agreement and in consideration for the government's promises hereunder, to the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum, and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court.

Id. at 6. Furthermore, by signing the plea agreement, Petitioner represented that he understood that:

> [T]he U.S. Probation Office will prepare a presentence investigation report for the Court, and that the U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence.

Id. at 8-9. By signing it, Petitioner attested that he had read and understood the plea agreement and that the plea agreement accurately set forth the terms and conditions of his agreement with the government. Id. at 13.

The Honorable J. Randal Hall, United States District Judge, held a Rule 11 hearing on June 5, 2009. During that hearing, Judge Hall conducted questioning to determine whether Petitioner was competent to plead guilty. Id., doc. no. 60, pp. 5-8 (transcript of Rule 11 hearing). Judge Hall explained the rights that Petitioner would waive by pleading guilty, including the right to plead not guilty and have the government carry its burden of proof on his guilt at a jury trial, and Petitioner affirmed he clearly understood those rights. Id. at 8-11. Judge Hall asked

2

Petitioner whether he was satisfied with the help that he received from retained counsel, Jacque

Hawk, to which Petitioner answered, "Yes, sir." Id.

Next, Judge Hall proceeded to review the entire indictment, explaining the charges and

the conduct forming the basis of each charge. Id. at 11-13. Petitioner testified that he

understood the contents of the indictment. Id. at 14. Judge Hall then reviewed the elements of

Count Two, to which Petitioner was pleading guilty:

> First, that [Petitioner] knowingly received electronic images containing
> child pornography.
> Second, that the child pornography was transported, via computer, in
> interstate and foreign commerce and was produced using materials that traveled
> in interstate and foreign commerce.
> And, third, that at the time [Petitioner] possessed the child pornography,
> [he] believed it contained at least one minor engaged in the sexually explicit
> conduct.

Id. at 14. When Judge Hall asked Petitioner if he understood that the government would have

to prove these elements to convict him, Petitioner responded, "Yes, sir." Id. at 14-15.

Judge Hall also explained at the Rule 11 hearing that the statutory mandatory minimum

sentence for Petitioner's crime was five years of imprisonment, and that the maximum was

twenty years, along with a fine of up to $250,000.00, a supervised release term of five years to

life, and a special assessment of $100.00. Id. at 15. When Judge Hall asked Petitioner whether

he understood the penalties, Petitioner responded, "Yes, sir." Id. at 16. Moreover, Judge Hall

explained the role of the United States Sentencing Guidelines ("U.S.S.G."), emphasizing that

"they are not mandatory; they are advisory." Id. at 16. After Judge Hall explained the advisory

nature of the U.S.S.G., he further advised Petitioner that "the probation office will conduct an

investigation into your crime. What we call a Presentence Investigation. Your background, your

crime and other factors" and "[a]s a result of that, they will determine an appropriate sentencing

guideline range." Id. at 16. Judge Hall then asked Petitioner whether he was familiar with the

guidelines and had discussed them with counsel, to which Petitioner responded "Yes, sir." Id. at 16. Judge Hall also asked Petitioner whether "anyone promised you or represented to you or made a prophesy or prediction that you could receive a specific sentence in this case?" Id. at 16-17. Under penalty of perjury, Petitioner responded, "No, sir." Id. at 17.

Next, Judge Hall summarized the terms of Petitioner's plea agreement and explained to Petitioner that he had agreed "to waive the right to directly appeal [his] conviction and sentence and to file an appeal in connection with a post conviction process like a Habeas Corpus proceeding," subject to the two limited situations provided for in the plea agreement. Id. at 17-18. Judge Hall asked if Petitioner understood those rights and still wished to waive his post-conviction rights, and Petitioner responded, "Yes, sir." Id. Petitioner further testified that he read and discussed the plea agreement with counsel before he signed it. Id. at 19.

Petitioner also averred, in response to a question asked by Judge Hall, that no one had "force[d]" or "require[d]" him to come to court to plead guilty, and that no one had "promise[d] [him] anything to induce [him]" to do so. Id. at 5. He further swore that, "[o]ther than the promises made in that plea agreement," no one from the government "made any promise to [him] regarding the outcome of [his] case." Id. at 19-20. Judge Hall then asked if Petitioner still wanted to plead guilty to Count Two, to which Petitioner responded, "Yes, sir." Id. at 20. Petitioner also averred, in response to a question from Judge Hall, that he was pleading guilty because he was "in fact, guilty[.]" Id. Judge Hall thus found that Petitioner was competent, that he fully understood the charges against him, and that he "offered his plea of guilty as a matter of his own free choice, without any other coercion or other influence," and Judge Hall approved the plea agreement. Id. at 21-22.

In addition, Special Agent Brian Ozden with the Federal Bureau of Investigation

provided testimony as to the factual basis for the plea, the truth of which Petitioner confirmed. Id. at 22-27. Petitioner then briefly explained his conduct to Judge Hall. Id. at 28-29. When Petitioner was finished, Judge Hall asked him how he wished to plead, and Petitioner answered, "I'm guilty, sir." Id. at 29. Judge Hall specifically asked if Petitioner was "guilty as charged in Count Two of the indictment," to which Petitioner answered, "Yes, sir." Id. At the conclusion of the Rule 11 colloquy, Judge Hall accepted Petitioner's guilty plea. Id.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided for a base offense level of 22 and several enhancements: (1) two points because the offense involved a minor under age 12; (2) five points because the offense involved distribution for receipt or expectation of receipt of a thing of value; (3) four points because the offense involved violent material; (4) two points because the offense involved the use of a computer; and, (5) five points because the offense involved more than 600 images. PSI ¶¶ 22-27. Petitioner's resulting total offense level was 40 and his criminal history category was I. Id. ¶¶ 35, 38. Pursuant to the sentencing guidelines, the range for imprisonment for Petitioner was 292 to 365 months, but because the statutory maximum of 240 months was less than the minimum applicable guideline range, the guideline sentence was 240 months pursuant to U.S.S.G. § 5G1.1(a). Id. ¶¶ 56-57.

At Petitioner's sentencing hearing, which was held on December 2, 2009, Judge Hall found, consistent with the PSI, that Petitioner had a total offense level of 40 and a criminal history category of I, which resulted in the statutory maximum sentence of 240 months imprisonment, five years to life supervised release, $25,000.00 to $250,000.00 fine, and a $100.00 special assessment. CR 109-003, doc. no. 61, pp. 27-28 (transcript of sentencing hearing). Judge Hall then sentenced Petitioner to serve the statutory maximum 240-month term

of imprisonment, fined him $2,000.00, and ordered him to pay a special assessment of $100.00 and to be placed on supervised release for life. Id. at 60-62.

On December 11, 2009, Petitioner filed a *pro se* notice of appeal.[1] Id., doc. no. 43. In an Order dated September 2, 2010, the Court of Appeals granted Petitioner leave to proceed IFP on appeal, and advised Mr. Hawk that he was obligated to continue representing Petitioner.[2] Id., doc. no. 53. On June 1, 2011, the Eleventh Circuit affirmed Petitioner's conviction and sentence. United States v. Gambrel, 427 F. App'x 867, 867 (11th Cir. 2011) (*per curiam*). In the opinion, the Court of Appeals noted that Mr. Hawk had filed a brief pursuant to Anders v. California, 386 U.S. 738 (1976),[3] and the Court stated that its "independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct" and that an "independent examination of the entire record reveals no arguable issues of merit." Id.

Petitioner then timely filed the instant § 2255 motion. (Doc. no. 1, pp. 1, 31.) Petitioner

---

[1] In a letter in the record dated November 22, 2010, Petitioner alleged that he filed the notice of appeal *pro se* because Mr. Hawk would not. See CR 109-003, doc. no. 62, p. 2.

[2] Petitioner includes as an attachment a letter from Mr. Hawk, dated October 13, 2010, in which Mr. Hawk explained that "[d]espite [his] best efforts to get [Petitioner] an independent counsel to brief [Mr. Hawk's] own ineffectiveness, the Court of Appeals has denied the request." (Doc. no. 1, p. 36.) According to other attachments to his § 2255 motion, Petitioner then submitted motions for an extension of time to file his brief and for appointment of new counsel. (Id. at 42-46, 47-50.) In an Order dated January 5, 2011, the Court of Appeals denied Petitioner's motions to dismiss Mr. Hawk and have replacement counsel appointed, as well as his motion for an extension of time, and Mr. Hawk was again advised of his obligation to continue representing Petitioner. CR 109-003, doc. no. 64.

[3] Petitioner submitted an apparent copy of Mr. Hawk's Anders motion and brief with his § 2255 motion. (See doc. no. 1, pp. 51-66.) In the motion, Mr. Hawk argued that he had "conscientiously examined the record and proceedings" and found that "any appeal in the case would be wholly frivolous," but he also submitted a brief "which refers to anything in the record that might arguably support an appeal." (Id. at 51.) In the brief, Mr. Hawk argued on Petitioner's behalf that trial counsel – Mr. Hawk, himself – was ineffective for conceding Petitioner's guilt at an early stage "as a strategy to hopefully lessen his sentence." (Id. at 63.)

raises four grounds for relief therein:[4] (1) his counsel provided ineffective assistance in that he: (a) "prematurely" advised Petitioner to plead guilty and cooperate with the government; (b) failed to review the indictment and plea agreement and explain Petitioner's rights to him; and, (c) failed to explain the ramifications of Petitioner's pre-sentence interview with the Probation Department and allowed the interview to take place before Petitioner entered his guilty plea; (2) his guilty plea was not knowing or voluntary; (3) he received ineffective assistance of counsel resulting in an "unreasonable" sentence; and, (4) his counsel "abandoned" him on direct appeal. (See id. at 4-19.) In its motion to dismiss, Respondent contends that Petitioner's § 2255 motion should be dismissed because his claims are either barred by the collateral attack waiver in his plea agreement or otherwise lack merit. (See generally doc. no. 3.) Petitioner filed a response to the motion to dismiss. (Doc. no. 4.) The Court resolves the matter as follows.

## II.    DISCUSSION

### A.    No Need For Evidentiary Hearing

Petitioner requests an evidentiary hearing in his § 2255 motion. (Doc. no. 1, pp. 21-23.) With regard to that request, the Eleventh Circuit has recognized that an evidentiary hearing "is often required for development of an adequate record" for effective assistance claims. Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States,

---

[4]Petitioner's fifth proffered ground is not a separate ground for relief, but rather a request for an evidentiary hearing on his § 2255 motion. (See doc. no. 1, pp. 21-23.)

876 F.2d 1545, 1553 (11th Cir. 1989). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

### B.     Effect Of Collateral Attack Waiver In The Plea Agreement

#### 1.     Knowing and Voluntary Nature of Waiver

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[5] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. Thus, if the government meets this burden in the instant case, then the appeal and collateral attack waiver provisions of Petitioner's plea agreement are enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (per curiam)

---

[5]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004).

(enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 109-003, doc. no. 31, p. 6. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, emphasizing to Petitioner that he had agreed "to waive the right to directly appeal [his] conviction and sentence and to file an appeal in connection with a post conviction process like a Habeas Corpus proceeding," subject to the exceptions noted above. Id., doc. no. 60, pp. 17-18. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. Thus, the Court concludes that the collateral attack waiver is valid. Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement and the validity of his guilty plea, claims which, if found to have merit, would cast doubt on whether Petitioner validly waived his right to collaterally attack his sentence. However, as discussed infra, the Court determines that these claims lack merit, thus supporting the conclusion that Petitioner validly waived his right to a

9

collateral post-conviction attack of his sentence.

Moreover, "[a]n ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id. Therefore, Petitioner's claims in Ground Three, in which he contends that his sentence was "unreasonable"[6] and that counsel was ineffective for failing to investigate and challenge the enhancements to his sentence – i.e., that counsel was ineffective at sentencing – are barred from review.

### 2. Claims in Grounds One and Two not Barred by Waiver, but Lack Merit

Notwithstanding the above analysis, some claims, including those of ineffective assistance of counsel, can survive a valid waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he

---

[6]Specifically, Petitioner contends that his sentence "resulted in a punishment greater than necessary to achieve the appropriate sentencing goals dictated by [18 U.S.C. § 3553(a)(2)]." (Doc. no. 1, p. 14.)

was entering the plea or ineffectiveness related to advice he received regarding the waiver."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp. 2d at 1365.

Petitioner's claims in Grounds One purport to challenge his counsel's performance as it relates to the validity of his plea and waiver, while his claims in Ground Two purport to challenge the knowing and voluntary nature of the plea itself. (See doc. no. 1, pp. 4-13.) Accordingly, these claims are not barred by the provision in the plea agreement waiving Petitioner's right to collaterally attack his sentence.

> ### a. Ineffective Assistance of Counsel Claims in Ground One Lack Merit

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S.

at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Petitioner levels a host of allegations concerning his counsel's alleged ineffectiveness before he ultimately entered his guilty plea. The Court addresses these in turn.

### i. Counsel's Alleged "Premature" Advice to Plead Guilty and Cooperate with the Government

Petitioner first contends that counsel was ineffective for "prematurely" advising Petitioner to plead guilty and cooperate with the government before Petitioner was indicted. (Doc. no. 1, p. 5.) According to Petitioner, he met with counsel for the first time in May of 2008, after the FBI had already executed a search warrant for computers containing child pornography.[7] (Id.) Petitioner asserts that counsel "immediately" advised him to plead guilty, without "ever having reviewed the search warrant, discovery documents, or any paperwork naming the charged criminal conduct[.]" (Id.) Petitioner states that he "felt that he had committed a serious crime and that he was indeed willing to plead guilty to it," and that he based his decision to plead guilty on the May 2008 meeting with counsel. (Id. at 5, 6.)

Petitioner's allegation that counsel was ineffective for "prematurely" advising him to plead guilty, however, lacks merit because Petitioner fails to show prejudice. By the time Petitioner met with counsel in May of 2008, the government had already secured a wealth of evidence against him, including a candid confession in which Petitioner took full responsibility for his receipt of child pornography. See PSI ¶¶ 11-12, 14-15. Petitioner now faults counsel for advising him to plead guilty and cooperate with the government under these circumstances,

---

[7]The PSI reflects that on March 28, 2008, FBI and GBI agents executed a search warrant at Petitioner's home, and recovered computers and other hardware containing "over 2,000 images of child pornography," as well as 8 videos containing child pornography. PSI ¶¶ 11-12. The PSI also reflects that Petitioner consented to an interview with Special Agent Ozden on the same date, in which he "professed that he utilized the web site hello.com to download pornography of all kinds, to include child pornography," as well as stating that "he had received all of the child pornography in his possession from others" and that "approximately 25 percent of his pornography collection contained images of children under the age of 17." Id. ¶¶ 14-15.

without, for instance, "review[ing] the search warrant" or "discovery documents." Yet Petitioner fails to explain how such conduct by counsel would have resulted in a different outcome here. Petitioner does not deny that he received child pornography, nor does he challenge the legality of the government conduct that resulted in the seizure of evidence and his confession. Even if counsel could have more fully investigated the case before advising Petitioner to plead guilty, Petitioner fails to show that he was prejudiced by counsel's failure to do so.[8] See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59.

### ii. Counsel's Alleged Failure to Review the Indictment and Plea Agreement and to Explain Petitioner's Rights to Him

Petitioner also alleges that counsel was ineffective for failing to explain the "legal principles" involved in a multiple-count indictment and the difference between concurrent and consecutive sentences, as well as for failing to explain "the value of a jury trial over a plea deal." (Doc. no. 1, p. 5.) Petitioner further alleges that counsel presented the plea agreement to him on the same afternoon it "had to be filed," and that counsel became "frustrated" when Petitioner asked questions about its contents and "never explained the counts or the sentencing exposure of each count." (Id. at 6.) Petitioner finally alleges that counsel never informed him of his rights to "not change his plea to guilty" and "go to trial." (Id. at 7.)

Even if counsel did not review these matters with Petitioner,[9] he still fails to show

---

[8] Indeed, this claim is similar to the one Petitioner raised on direct appeal, that counsel was ineffective for conceding Petitioner's guilt early on and advising him to cooperate with the government "as a strategy to hopefully lessen his sentence." (Doc. no. 1, p. 63.) As noted earlier, however, the Eleventh Circuit found that there were "no arguable issues of merit" on Petitioner's appeal. See Gambrel, 427 F. App'x at 867.

[9] Notably, at the Rule 11 hearing, Petitioner testified that he met with counsel "several times" to discuss his case, and that counsel went over the indictment with him and allowed him to ask questions. CR 109-003, doc. no. 60, p. 11. Moreover, Petitioner testified that he read and

prejudice here because Judge Hall fully reviewed the indictment and the plea agreement at Petitioner's Rule 11 hearing, and he also explained all of the rights Petitioner was waiving by pleading guilty, including the right to a jury trial.[10] CR 109-003, doc. no. 60, pp. 8-11, 11-13. On the cusp of pleading guilty at the Rule 11 hearing, Petitioner was advised that it was not too late for him to change his mind and maintain his innocence. Nonetheless, Petitioner informed Judge Hall that he wished to plead guilty, id. at 20, 29, and he thus fails to show how the outcome would have been different if it had been counsel who reviewed these matters with him rather than Judge Hall. See Hill, 474 U.S. at 59.

### iii. Counsel's Alleged Ineffectiveness with Respect to the Pre-Sentence Interview

Petitioner also contends that counsel was ineffective for failing to correctly advise him of the ramifications of his pre-sentence interview with the Probation Department, as well as for allowing the interview to take place, before the Rule 11 hearing. (Doc. no. 1, p. 7.) Petitioner clarifies in his response to the government's motion to dismiss that counsel "never" explained

---

discussed the plea agreement with his attorney before signing it. Id. at 19. Finally, in the plea agreement, Petitioner explicitly represented that he and his attorney "discussed the defendant's right to a public trial by jury or by the Court," and that he had "weighed the relative benefits of a trial by jury or by the Court versus a plea of guilty" with his attorney. Id., doc. no. 31, p.10.

[10]Moreover, with regard to Petitioner's allegation that counsel failed to explain "the counts or the sentencing exposure of each count," (doc. no. 1, p. 6), Petitioner fails to explain how knowing the particular penalties associated with each of his charges would have changed his decision to plead guilty to Count Two. To the extent he might be asserting that he would have tried to plead to a count with a lower sentencing exposure, such as Count Three (possession of child pornography), see CR 109-003, doc. no. 2, he falls well short of *establishing* that he would not have entered the plea he did and would have taken his chances at trial had he not been offered such a deal. It is wholly speculative that Petitioner would have been given the option to plead to something more favorable than Count Two. See, e.g., United States v. Palmer, 809 F.2d 1504, 1508 (11th Cir. 1987) (explaining that plea bargaining decisions are entirely within the prosecutor's discretion and that "[t]he government [is] under no obligation to enter into any plea bargaining or to accept any deal offered by [a defendant].").

to him that "the [P]robation [D]epartment could utilize uncharged conduct in the indictment, plea agreement, or Rule 11 hearing to increase [Petitioner's] sentencing exposure 18 levels above the 22 levels that Petitioner had plead (sic) guilty to."[11] (Doc. no. 4, p. 11.) According to Petitioner, counsel's *failure to inform him about the potential sentence* enhancements caused a "'Lack of Notice' as to the exact nature of the charged conduct in the plea agreement." (Doc. no. 1, p. 7.)

This claim of ineffective assistance of counsel also fails for lack of prejudice, however. So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Sentencing Guidelines. See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea."); see also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (district court correctly denied § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [petitioner's] potential sentence.").

Here, Judge Hall correctly explained to Petitioner the minimum and maximum penalties that might be imposed in the event of his conviction, including no less than five and no more

---

[11] As noted earlier, Petitioner's base offense level for purposes of the U.S.S.G. was 22, before any enhancements were imposed. See PSI ¶ 22.

than twenty years of incarceration, and Petitioner testified that he understood those penalties. CR 109-003, doc. no. 60, pp. 15-16. Moreover, the plea agreement that Petitioner signed clearly provided that the U.S. Probation Office would "consider all of [his] conduct related to the offense to which he is pleading," id., doc. no. 31, pp. 8-9, and Judge Hall informed Petitioner that his sentence would be based on this investigation by the Probation Office and application of the advisory Sentencing Guidelines, id., doc. no. 60, pp. 16-17. Thus, no prejudice inured to Petitioner as a result of counsel's alleged failure to correctly inform him about the impact of the presentence interview on his sentence,[12] because he was sufficiently informed by the plea agreement and the Rule 11 court of the penalties he was facing before he entered his guilty plea, and he still elected to do so. See Wilson, 245 F. App'x at 11-12; Hill, 474 U.S. at 59.

Petitioner ultimately contends that counsel's failure to inform him about potential sentencing enhancements caused a "'Lack of Notice' as to the exact nature of the charged conduct in the contractual plea agreement[.]" (Doc. no. 1, p. 7.) In making this claim, however, Petitioner appears to have confused the criminal charge to which he pled guilty with the sentence he ultimately received. As discussed in greater detail infra, Petitioner was fully and correctly informed of the elements of the charge to which he was pleading guilty, receipt of child pornography under 18 U.S.C. § 2252A(a)(2), as well as the statutory penalties. See Part II.B.2.b.

---

[12]Nor can Petitioner show any prejudice based on the mere fact that the presentence interview happened to take place before the Rule 11 hearing. Indeed, the Federal Rules of Criminal Procedure specifically contemplate that a presentence report, of which the presentence interview is a part, may be prepared before the trial court has actually accepted a guilty plea. See Fed. R. Crim. P. 32(e)(1) ("Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty.") (emphasis added); see also Gregg v. United States, 394 U.S. 489, 491-92 (1969) (interpreting an earlier version of Rule 32, which provided that the "report shall not be submitted to the court . . . unless the defendant has pleaded guilty or been found guilty," and noting that the rule "clearly permits the preparation of a presentence report before guilty plea or conviction.").

The enhancements to Petitioner's sentence, on the other hand, were based on characteristics of that offense delineated under the U.S.S.G. for determining the appropriate sentence within that range, such as the fact that some of the pornography "involved material that portrays sadistic or masochistic conduct or other depictions of violence." See U.S.S.G. § 2G2.2(b); PSI ¶¶ 22-27. There was no requirement that Petitioner be informed of the specific enhancements to his sentence before entering his guilty plea, see United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (*per curiam*), nor were those enhancements part of the charge to which he was pleading. See Corona v. United States, 8:05-CV-1213-T-30MAP, 2006 WL 1232650, at *4 (M.D. Fla. May 8, 2006) (rejecting petitioner's argument that he did not understand "nature of the charge" because he was not advised of a sentencing enhancement, as "the enhancement did not affect the 'nature of the charge' set out in the indictment and in [p]etitioner's plea agreement."). Therefore, Petitioner's claim that he lacked "notice" about the *charge* in his plea agreement because of the subsequent application of sentencing enhancements is meritless, and he can thus show no prejudice from counsel's alleged failure to inform him about the sentencing enhancements.

In sum, for the reasons discussed above, Petitioner has failed to establish that counsel was ineffective with his various allegations of counsel's deficiencies before he entered the guilty plea. Put another way, Petitioner has failed to show how the outcome of the proceeding would have been different – i.e., that he would not have entered the guilty plea he did – but for counsel's alleged errors. See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59. Petitioner is therefore not entitled to relief on any of the claims of ineffective assistance of counsel in Ground One of his § 2255 motion.

### b.     Petitioner's Guilty Plea Was Knowing and Voluntary

Thus, having resolved Petitioner's claims of ineffective assistance of counsel before entry of the plea, the Court will address his claim that his guilty plea itself was not knowing and voluntary, which overlaps significantly with his various allegations of pre-plea ineffective assistance of counsel. Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The

Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

In his § 2255 motion, Petitioner contends that he was instructed "to not disagree with anything said during the [Rule 11] hearing," that he was "induced" to plead guilty by prospect of receiving a reduction for acceptance of responsibility and being sentenced as a "non-violent, first time offender," that he did not understand the nature of the charges, and that he did not understand the consequences of his plea because he was not aware of the potential enhancements to his sentence. (See doc. no. 1, pp. 9-11; doc. no. 4, pp. 8-9.) As the government persuasively argues, however, all of these allegations directly contradict Petitioner's sworn testimony during the Rule 11 hearing. (See doc. no. 3, p. 10.)

Indeed, the extensive plea colloquy conducted by Judge Hall addressed each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charges to which Petitioner was pleading guilty, by reading the entire indictment aloud, and then by specifically reviewing the three elements of the count to which Petitioner was pleading and explaining that the government would have to prove these elements to convict him. CR 109-003, doc. no. 60, pp. 11-15. Petitioner testified that he understood those

elements.[13] Id. at 15. Judge Hall also explained to Petitioner the maximum penalties that might

be imposed in the event of his conviction, including twenty years of incarceration, and Petitioner

testified that he understood those penalties. Id. at 15-16. Judge Hall provided a detailed

explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that

he understood these rights and that his decision to plead guilty would result in a waiver of these

rights. Id. at 8-11. Petitioner further testified that no one had made him any promise, prediction,

or prophesy that he would receive a particular sentence, that no one had forced or required him

to plead guilty, that no one had promised him anything to induce his guilty plea, and that he was

pleading guilty because he was "in fact, guilty[.]" Id. at 5, 16-17, 19-20. Finally, in the plea

agreement, which Judge Hall verified that Petitioner read and understood, Petitioner explicitly

acknowledged his understanding that his sentence would reflect "all of [his] conduct related to

the offense."[14] Id., doc. no. 31, pp. 8-9.

---

[13]Petitioner contends that a statement he made during the Rule 11 colloquy demonstrates that he did not understand the elements of his charge. He asserts that his statement that "not one single picture do they have of a child taken by me in an [in]appropriate manner" at the hearing, CR 109-003, doc. no. 60, p. 35, shows that he must have thought "production of child pornography" was an element of the offense, which it was not. (Doc. no. 1, p. 11.) Notably, however, Petitioner made that statement at the *end* of the hearing, after acceptance of the guilty plea, when Judge Hall was considering whether to detain Petitioner awaiting sentencing. Judge Hall reviewed the elements of the offense much earlier in the hearing, and Petitioner evinced *no* misunderstanding of those elements at that point. See CR 109-003, doc. no. 60, pp. 14-15. The Court is not persuaded that this out-of-context statement overcomes the strong presumption afforded Petitioner's sworn testimony that he understood the elements of the offense.

[14]Of note, so long as a defendant is informed of the maximum possible *penalties* he faces, his lack of knowledge about specific sentencing *enhancements* does not render his guilty plea unknowing and involuntary. See Herrington, 350 F. App'x at 369 (where court informed defendant of potential for 50 years' imprisonment if he pled guilty to two counts of indictment, and that counsel's advice about possible sentence was not binding on the court, failure to inform him of potential for career-offender enhancement did not establish that his guilty plea was not knowing and voluntary). Rather, "[w]here the court elicits that a defendant is aware of the Guidelines, and that the defendant has discussed the effect of the Guidelines with his attorney, Rule 11 compliance has occurred." United States v. Simpson, 154 F. App'x 860, 861 (11th Cir. 2005) (*per curiam*). (continued on next page)

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea. Moreover, the Court declines Petitioner's belated invitation to ignore his "solemn declarations in open court," Blackledge, 431 U.S. at 74, in favor of his self-serving allegations that he was not only instructed to be dishonest at the Rule 11 hearing, but that he complied with that instruction by repeatedly lying under oath to the very Court from which he now seeks relief. See also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") (citing United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).[15]

For that matter, Petitioner's allegations fall well short of establishing a reasonable probability that he would not have pled guilty absent the alleged "instruction" from counsel or misunderstanding based on counsel's alleged ineffectiveness, especially given his unwavering admission of guilt.[16] See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that

---

Here, Judge Hall informed Petitioner of the maximum penalties he faced because of his charge, regardless of any possible sentencing enhancements. CR 109-003, doc. no. 60, pp. 15-16. Judge Hall also made Petitioner aware of the use of the Sentencing Guidelines and insured that he had discussed them with his attorney. Id. at 16-17. Petitioner testified that he understood all of this. Id. at 16, 17. Judge Hall thus fulfilled his obligations under Rule 11 with respect to informing Petitioner of the consequences of his guilty plea. Accordingly, there is no merit to Petitioner's claim that his guilty plea was not knowing and voluntary because he was unaware of the specific enhancements that would be added to his sentence. (See doc. no. 1, p. 7; doc. no. 4, pp. 12-13.)

[15]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[16]As noted earlier, as part of the agreement, Petitioner avoided having to stand trial on Count One of the indictment, transportation of child pornography, which carried, inter alia, an

22

Petitioner's guilty plea was entered knowingly and voluntarily. Therefore, Ground Two of Petitioner's § 2255 motion is without merit.

## C.    Ineffective Assistance of Counsel Claim in Ground Four Lacks Merit

Finally, Petitioner contends in Ground Four that counsel "abandoned" him on direct appeal. Notably, whether a claim of ineffective assistance of counsel based on counsel's failure to consult with his client concerning filing a direct appeal survives a collateral attack waiver is currently a question on appeal before the Eleventh Circuit. See Jones v. United States, No.12-10562 (11th Cir. Feb. 1, 2012). The Court is aware that Petitioner's claim of "abandonment" is distinct from the claim that counsel failed to consult with his client about an appeal. However, Judge Hall recently issued a certificate of appealability on the related issue of whether a collateral attack waiver bars a § 2255 claim that "trial counsel provided ineffective assistance of counsel as a result of his actions related to pursuing a direct appeal." See Marshall v. United States, CV 111-097, doc. no. 17, p. 5 (S.D. Ga. Feb. 28, 2013).

Fortunately, the Court need not address the effect of the collateral attack waiver on Ground Four of the instant § 2255 motion since, notwithstanding the waiver, the claim asserted in Ground Four fails on the merits under Strickland.[17]   Accordingly, the Court will apply the

---

additional minimum of five years incarceration and the potential for up to twenty years. See CR 109-003, doc. nos. 1, 2, 31. While Petitioner is obviously dissatisfied that he received the statutory maximum term of incarceration for receipt of child pornography as a result of pleading guilty, the Court is simply not persuaded that Petitioner would have taken his chances at trial and risked receiving an even more severe sentence.

[17]Petitioner confusingly asserts, in his response to the government's motion to dismiss, that he is not arguing ineffective assistance of counsel in Ground Four, but rather that counsel failed to act as Petitioner's "agent" and "abandoned" him. (Doc. no. 4, p. 2 n.2.) Petitioner nonetheless asserts that he has met the cause and prejudice standard of Strickland. Moreover, in the primary case Petitioner relies upon, Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court applied the Strickland ineffective assistance of counsel framework to a claim that counsel failed to file an appeal for a defendant. Put another way, Petitioner does not cite and the Court is not aware of any authority for Petitioner's claim being governed by a standard other

same two-part test for prejudice and ineffectiveness set forth supra Part II.B.2.a, and it makes

no finding as to whether Petitioner's claim that Mr. Hawk "abandoned" him on appeal is barred

by the collateral attack waiver.[18]

That having been said, Petitioner's claim that he received ineffective assistance from Mr.

Hawk on direct appeal lacks merit, as Petitioner fails to show prejudice. While Petitioner filed

his notice of appeal *pro se*, CR 109-003, doc. no. 43, Mr. Hawk not only submitted an Anders

brief, but he also apparently submitted a brief to the Eleventh Circuit Court of Appeals arguing

his own ineffectiveness as trial counsel (see doc. no. 1, pp. 51-66). Put another way, Petitioner

was not "abandoned" on appeal by counsel at all, but in fact received assistance of counsel at

that stage. More significantly, the Eleventh Circuit found that "counsel's assessment of the

relative merit of the appeal [was] correct." Gambrel, 427 F. App'x at 867. Accordingly, the

Eleventh Circuit found no issues of arguable merit and affirmed Petitioner's conviction and

sentence. Id.

In light of the fact that Petitioner received full consideration by the Eleventh Circuit and

was found to have no meritorious issues to present on appeal, as well as the fact that Mr. Hawk

in fact handled his appeal, Petitioner simply fails to show prejudice based on Mr. Hawk's alleged

performance on direct appeal.[19] Strickland, 466 U.S. at 687. Accordingly, Petitioner is not

_____

than that for ineffective assistance of counsel. See Cuesta v. United States, 05-21626-CIV, 01-377-CR, 2008 WL 678677, at *1 (S.D. Fla. Mar. 12, 2008) (construing petitioner's claim in a motion for reconsideration that counsel "abandoned" him during proceedings on his § 2255 motion as an attempt to make an ineffective assistance of counsel claim). Accordingly, the Court will analyze this claim under the Strickland standard.

[18]The Court's decision to analyze Ground Four on the merits does not result in any prejudice to Respondent, given that Respondent has already argued the merits of Ground Four in its motion to dismiss. (Doc. no. 3, p. 16.)

[19]For that matter, Petitioner's reliance on Flores-Ortega is misplaced. In that case, the Supreme Court held that "when counsel's constitutionally deficient performance deprives a

entitled to any relief on the claim in Ground Four.

In sum, Petitioner is not entitled to relief on any of the four grounds that he asserts in his § 2255 motion.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 3), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this **17th** day of May, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." 528 U.S. at 484. Accordingly, any claim relying on that case fails out of the gate, because Petitioner was *not* deprived of an appeal. Moreover, as explained <u>supra</u>, Petitioner has failed to otherwise explain how he was prejudiced by counsel's performance on direct appeal.